**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEEM MAYS | : | |
| | : | |
| Appellant | : | No. 2183 EDA 2023 |

Appeal from the Judgment of Sentence Entered July 24, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003461-2022

BEFORE: LAZARUS, P.J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED JULY 17, 2024**

Aleem Mays (Appellant) appeals from the judgment of sentence imposed after his non-jury convictions of one count each of possession with intent to deliver a controlled substance (PWID) and possession of a controlled substance (possession).[1] We affirm.

From the evidence adduced at trial, the trial court made the following factual findings:

> Officer James Reilly (Reilly) has served has a Philadelphia Police Officer for 29 years[, including] 26 years as a member of the Narcotics Strike Force and three years as a member of the Highway Patrol. N.T., 5/12/23, at 10-11. Reilly has undergone specialized training—from the DEA, ATF, Narcotics Task Force, and Police Academy—throughout his time on the Narcotics Strike Force. ***Id.*** at 11. The training include[d] observing drug transactions, drug sales, drug smells, and drug packaging. ***Id.*** During his time with [the] Highway Patrol, Reilly also had

---

[1] 35 P.S. §§ 780-113(a)(30), 780-113(a)(16).

opportunities to respond to alleged drug transactions. *Id.* During his 26 years with the Narcotics Strike Force, Reilly has conducted well over a thousand plainclothes surveillances and has been the "eyes" on well over a thousand surveillances. *Id.* at 12. The "eyes" on a surveillance is the term used for the person observing the alleged drug transaction. *Id.* at 10. Reilly testified that he is familiar with the area of the 5700 block of Filbert Street in Philadelphia, and he had made drug arrests on that block before. *Id.* at 14….

On March 28, 2023[,] at about 6:30 p.m.[,] Reilly was on the 5700 block of Filbert Street [when he] came into contact with [Appellant]. *Id.* at 16. [Appellant] was in the front passenger seat of a Ford Taurus that was [parked] directly in front of Reilly's car. *Id.* at 17-18. … In addition to [Appellant], there were two other people in the [Taurus]—Jules Williams [(Williams), a female] who was in the driver's seat[,] and another male who was in the back seat behind the driver. *Id.* at 18, 49.

Reilly observed another woman approach the [Taurus] and knock on the front passenger side window. … That window was lowered, and Reilly testified that he saw the woman hand money into the [Taurus] and receive a small object in return. *Id.* at 19. Reilly clarified that [after] the woman knocked on the front passenger window, she handed money into the front passenger window …, and a hand came out of the front passenger window … and gave the woman the objects. *Id.* at 20, 47, 49.

Reilly believed this to be a drug sale. He testified that this was a familiar transaction—the exchange of money for small objects—and was consistent with narcotics sales. Reilly also testified that the interaction had the same pattern of narcotics sales that he had observed many times before. *Id.* at 21.

After observing the event, Reilly contacted [other officers] and directed them to stop the woman who had approached the front passenger side of the [Taurus,] after she turned from Filbert [Street] onto 57th Street. *Id.* at 22. Reilly was informed by another officer that the woman [had been] stopped, and Reilly then instructed his colleagues to investigate the occupants of the [Taurus,] which they did. *Id.* at 22-24.

[Appellant], seated in the front passenger seat, had [no contraband or currency] on his person at that time. *Id.* at 24. [Williams] had $22 in U.S. currency, a handgun tucked down the

- 2 -

front of her pants, and 21 black zip-lock packets of crack cocaine with gold skull emblems[. ***Id.*** at 24.] … The man in the rear seat located behind the driver had $20 in U.S. currency, a loaded .380 caliber gun in his waist[,] and several bags of marijuana. ***Id.*** at 40-41….

[Williams] told Reilly that she was [Appellant's] sister and that [Appellant] had given her the objects (the gun[,] the 21 packets of crack cocaine[,] and the money) that she had on her person.[2] ***Id.*** at 41. This statement is corroborated by the fact that while Reilly saw the transaction (money for small objects) between the woman who approached the [Taurus] and the person ([Appellant]) in the front passenger seat of the car, [Appellant] did not have [any contraband or currency] on him when the officers [searched him]—not even the money that Reilly testified he saw being given to [Appellant]. ***Id.*** at 19, 21, 24, 47, 49.

Later, Reilly obtained a search warrant for the [Taurus] and … seized: (1) $105.00; (2) a blue package of marijuana; and (3) unused packaging that is typically used for packaging drugs. ***Id.*** at 42.

Trial Court Opinion, 10/4/23, at 6-10 (citations and paragraph breaks modified; footnotes and paragraph numbering omitted; footnote added).

The Commonwealth subsequently charged Appellant with the above offenses, as well as conspiracy to commit PWID.[3] Hamilton Ringgold, Esquire (defense counsel), represented Appellant.

On May 12, 2023, the non-jury trial commenced, with Officer Reilly testifying as the Commonwealth's only witness. ***See*** N.T., 5/12/23, at 4-8. The Commonwealth had partially completed Officer Reilly's direct

---

[2] The trial court noted Appellant's counsel did not object to Reilly's testimony regarding Williams's statement. Trial Court Opinion, 10/4/23, at 10 n.6.

[3] 18 Pa.C.S.A. § 903(a).

examination, when the court crier alerted the trial court that an on-the-record colloquy had not been conducted regarding Appellant's waiver of his right to a jury trial. ***See id.*** at 25-28; ***see also*** Trial Court Opinion, 10/4/23, at 12. Following a recess, the trial court indicated it would "do the colloquy now…." N.T., 5/12/23, at 28. The court advised Appellant that it was "not presupposing what any of [Appellant's] answers would be," and that Appellant still had an opportunity to "make [his] decision" whether to waive his right to a jury trial. ***Id.***

The court then conducted an extensive colloquy, and Appellant waived his right to a jury trial and requested a non-jury trial. ***Id.*** at 28-38. During the colloquy, defense counsel agreed he did not "know any reason why [Appellant] should not be permitted to waive a jury trial." ***Id.*** at 37.[4]

After the colloquy, the trial court indicated the trial would resume, stating:

> All the previous testimony, objections, rulings, everything that went on before is incorporated. We don't have to start from square one and go through all that again. We all understand that's where we are?

***Id.*** at 38. Defense counsel indicated his agreement with this course of action, and the trial resumed. ***Id.*** at 38-39.

---

[4] Additionally, the record includes two jury trial waiver forms signed by Appellant and defense counsel, both dated May 12, 2023. The assistant district attorney and the trial court also signed one of the forms. In its opinion, the trial court noted the record is unclear whether these forms were signed before or after trial commenced. Trial Court Opinion, 10/4/23, at 11 n.9.

At the trial's conclusion, the trial court convicted Appellant of PWID and possession, and acquitted him of conspiracy. On July 24, 2023, the trial court sentenced Appellant to 6 to 12 months in prison, followed by 3 years of probation, for his PWID conviction. The trial court imposed no further penalty for Appellant's possession conviction. No post-sentence motion followed.

Appellant filed a timely notice of appeal. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents two issues for our review:

1. Was the evidence produced at trial … insufficient to convict Appellant of [PWID] …?

2. Did the trial court err in not providing to Appellant the proper opportunity to waive his right to a jury trial before the commencement of trial, in violation of Pa.R.Crim.P. 620 [and] 621(B)?

Appellant's Brief at v (capitalization modified; argument omitted).

In his first issue, Appellant challenges the sufficiency of the evidence underlying his PWID conviction. *Id.* at 6-10. Appellant argues he cannot have constructively or jointly possessed the narcotics found on Williams's person, as they were solely within Williams's control. *Id.* at 7-9. He further argues Williams's statement to Officer Reilly that Appellant had given her the drugs was not credible. *Id.* at 10. Finally, Appellant maintains there was no evidence that he was the individual who engaged in the hand-to-hand transaction with the woman who had approached the Taurus. *Id.* at 9-10.

When reviewing a sufficiency claim, this Court

must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Peralta*, 311 A.3d 1, 4 (Pa. Super. 2024) (citation omitted).

The statute governing PWID prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act…." 35 P.S. § 780-113(a)(30). "To sustain a PWID conviction, the Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance." *Commonwealth v. Smith*, ___ A.3d ___, 2024 PA Super 122, *10 (Pa. Super. filed June 10, 2024) (citation and quotation marks omitted).

The element of possession can be established "by proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Rojas-Rolon*, 256 A.3d 432, 437 (Pa. Super. 2021) (citation omitted).

Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that

constructive possession may be established by the totality of the circumstances.

*Id.* at 437-38 (citation omitted). As to joint constructive possession, we have observed that

the power and intent to control the contraband does not need to be exclusive to the appellant. Our Supreme Court has recognized that "constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." *Commonwealth v. Johnson*, 611 Pa. 381, 26 A.3d 1078, 1094 (2011) (internal citation omitted).

*Id.* at 438.

"It is well settled that all the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with intent to deliver." *Commonwealth v. Baker*, 72 A.3d 652, 658 (Pa. Super. 2013) (citation omitted).

"In Pennsylvania, the intent to deliver may be inferred from possession of a large quantity of controlled substance." [*Commonwealth v. Brockman*, 167 A.3d 29, 38 (Pa. Super. 2018)] (quoting *Commonwealth v. Lee*, 956 A.2d 1024, 1028 (Pa. Super. 2008)). Where the quantity of the controlled substance is not dispositive as to the intent, the court may also look to other factors, such as "the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and the sums of cash found in possession of the defendant." *Brockman*, 167 A.3d at 39 (quoting *Commonwealth v. Ratsamy*, 934 A.2d 1233, 1237 (Pa. 2007)).

*Smith*, 2024 PA Super 122, *10.

Here, the trial court determined the evidence was sufficient to sustain Appellant's PWID conviction. *See* Trial Court Opinion, 10/4/23, at 16-22. The trial court highlighted Officer Reilly's conclusion, "based on his decades of

experience," that he had observed "a narcotic transaction (money for small objects) between a woman who approached the [Taurus] and [Appellant,] the person sitting in the passenger side of the car…." *Id.* at 18. The trial court determined that, **given the positioning of each occupant in the Taurus, Appellant was the only individual who could have engaged in this hand-to-hand transaction**. *Id.* at 20 n.18.

> The trial court further noted that
>
> there was evidence of: (1) 21 individually wrapped packets[,] each containing a small amount of crack cocaine; (2) that these 21 packets were given by [Appellant] to [Williams]; (3) that money and a gun were also given by [Appellant] to [Williams]; (4) that [Appellant] had no money on him when he was arrested[,] even though Reilly … saw [Appellant] receive money from the woman who had approached the [Taurus]; (6) that unused baggies (which can be used to package drugs) were found in the [Taurus]. Moreover, no evidence was presented that there was any personal consumption paraphernalia found in the [Taurus] or on its occupants.

*Id.* at 21-22. The trial court concluded the totality of the evidence "sufficiently demonstrate[d] that [Appellant] either actually possessed crack cocaine or constructively/jointly possessed it," and that he "had the necessary intent for the PWID conviction…." *Id.* at 19, 21.

We agree with the trial court's cogent and thorough analysis. Our review discloses its factual findings are supported by the record, and its legal conclusions are sound. Viewed in the light most favorable to the Commonwealth as verdict winner, the evidence established Appellant engaged in a hand-to-hand drug transaction with the woman who had approached the

Taurus. In light of that finding, Williams's statement that Appellant handed her the drugs and money found on her person was not necessary to sustain the verdict. Nevertheless, Appellant's brief advances no grounds for disturbing the trial court's reliance on that statement as credible. *See Commonwealth v. Blackham*, 909 A.2d 315, 319 (Pa. Super. 2006) (noting that the factfinder "bears the responsibility to resolve questions of credibility, and, absent extraordinary circumstances, an appellate court will not substitute its judgment for that of the factfinder.") (quoting *Commonwealth v. Johnson*, 838 A.2d 663, 671 (Pa. 2003)). For these reasons, Appellant's first issue merits no relief.

In his second issue, Appellant argues the trial court violated Pa.R.Crim.P. 620 and 621(B) by not conducting Appellant's jury waiver colloquy until after the trial had commenced. Appellant's Brief at 11-12. However, Appellant failed to raise this issue before the trial court, either during trial or in a post-sentence motion. Accordingly, the issue is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Even if not waived, the issue would merit no relief. We review the totality of the circumstances surrounding a defendant's jury waiver to determine whether it was voluntary. *Commonwealth v. Foreman*, 797 A.2d 1005, 1015 (Pa. Super. 2002).

Rule 620 provides:

> In all cases, the defendant and the attorney for the Commonwealth may waive a jury trial with approval by a judge of the court in which the case is pending, and elect to have the judge try the case without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness.

Pa.R.Crim.P. 620. *See also* Pa.R.Crim.P. 621(B) ("At any time before the commencement of trial, a waiver of a jury trial or the judge's approval thereof may be withdrawn.").

To make a knowing and intelligent waiver, the defendant must know the "three basics of a jury trial," including "the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel." *Commonwealth v. Mallory*, 941 A.2d 686, 696-97 (Pa. 2008). "A waiver colloquy is a procedural device; it is not a constitutional end or a constitutional 'right.'" *Id.* at 697. While "an on-the-record colloquy is a useful procedural tool whenever the waiver of any significant right is at issue, … the colloquy does not share the same status as the right itself." *Id.*

In *Commonwealth v. Michaud*, 70 A.3d 862 (Pa. Super. 2013), the appellant argued his jury waiver was "unintelligent and unknowing" solely because "the trial court did not colloquy [him] prior to the start of [his non-jury] trial." *Id.* at 873. "[A]t the close of the prosecution's case, the trial

- 10 -

court realized its omission and, at that time, conducted [a lengthy] on-the-record colloquy." *Id.* at 872. Though we deemed the issue waived, we observed that the appellant's "bald assertions would not adequately establish that his jury trial right had been violated." *Id.* at 873. We noted our appellate courts "have held on a number of occasions" that "the mere absence of an on-the-record colloquy, alone, does not prove that a defendant unknowingly and unintelligently waived his right to a jury trial." *Id.* (citing *Mallory*, 941 A.2d at 697).

Here, Appellant argues:

When trial commences prior to the court inquiring as to whether the defendant has appropriately waived his constitutional right [to a jury trial], there is an inherent risk that the commencement of the proceedings coerces the accused to then acquiesce to a continuation of the proceedings when then offered the opportunity to stop, pick a jury, and then begin again. Regardless of whether a colloquy is conducted on the record, as in this case, there can be no assurance that the commencement of the trial before the jury is waived has not tainted the defendant's waiver of his constitutional right. The only appropriate course of action once the procedural defect was realized was for the court to declare a mistrial and begin again properly.

Appellant's Brief at 12. Appellant cites no legal authority in support of these arguments. *See id.*; *see also Commonwealth v. Pi Delta Psi, Inc.*, 211 A.3d 875, 883 (Pa. Super. 2019) (when an appellant "cites no pertinent authority to substantiate [his] claim … appellant's issue is waived.") (citing Pa.R.A.P. 2119(a)). Appellant's claim, like that in *Michaud*, appears to be a

"bald assertion" based solely on the colloquy's timing. *Michaud*, 70 A.3d at 873.[5]

Based on our review, the totality of the circumstances demonstrate Appellant's waiver was knowing and intelligent. Appellant acknowledged his understanding of the three essentials of a jury trial during the oral colloquy and in the two written waiver forms he signed. *See* N.T., 5/12/23, at 28-38; Jury Trial Waiver forms, 5/12/23. Nothing in the record suggests Appellant was pressured or coerced into waiving his jury trial rights or agreeing to incorporate the prior testimony, rather than restart the trial after the colloquy. N.T., 5/12/23, at 25-28, 38-39.[6] Accordingly, Appellant's second issue merits no relief.

Judgment of sentence affirmed.

_____

[5] Though he argues a colloquy conducted after a trial's commencement renders a waiver somehow "inherent[ly] … tainted," Appellant fails to specifically assert that his own waiver was in fact unknowing or unintelligent. *See* Appellant's Brief at 11-12.

[6] The trial court observed that, "if anything, [Appellant] benefitted from how this case played out because he was able to make his decision whether to waive his right to a jury trial after he (and his attorney) had previewed much of the Commonwealth's evidence." Trial Court Opinion, 10/4/23, at 30 (emphasis omitted); *see also id.* (concluding Appellant's waiver was knowing and intelligent).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date:  7/17/2024