2024 PA Super 122

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALICIA SMITH | : | No. 1019 WDA 2023 |

Appeal from the Order Entered August 10, 2023
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0000357-2023

BEFORE:   KUNSELMAN, J., BECK, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                        **FILED: June 10, 2024**

The Commonwealth of Pennsylvania appeals the order of the Court of Common Pleas of Washington County granting in part the petition for writ of *habeas corpus* filed by Appellee Alicia Smith.  The Commonwealth argues that the trial court erred in determining that the prosecution failed to present a *prima facie* case for several of Appellee's charges.  We reverse the trial court's order in part, affirm in part, and remand for further proceedings consistent with this decision.

Appellee was charged with two counts of possession with intent to deliver a controlled substance (cocaine and hydrocodone) ("PWID"), two counts of possession of a controlled substance (cocaine and hydrocodone) ("simple possession"), and two counts of possession of drug paraphernalia.[1]

---

[*] Former Justice specially assigned to the Superior Court.
[1] 35 P.S. § 780-113(a)(30), (16), and (32), respectively.

At Appellee's preliminary hearing, the following factual background was developed: on November 18, 2022, Detective David Kimball of the Charleroi Regional Police Department responded to assist with the execution of a search warrant issued for the residence at 704 Monongahela Avenue, Charleroi, Pennsylvania where Appellee resided with Keaundre Crews. Notes of Testimony (N.T.), Preliminary Hr'g, at 4-5.[2]

During the search, Detective Kimball entered the sole bedroom in the residence and inspected a dresser, in which he discovered that the top drawer contained a "white, hard substance" wrapped in a paper towel. N.T. at 6-7. Based on his training and experience which included "thousands" of drug investigations, Detective Kimball believed the substance was cocaine. N.T. at 7, 22. In addition, Detective Kimball found a pill bottle of hydrocodone prescribed to "Marcus Alums" on the nightstand next to the bed.[3] N.T. at 7.

Upon finding the suspected controlled substances, Detective Kimball stopped the search of the residence to apply for and obtain a narcotics search warrant. N.T. at 7. Once the narcotics search warrant was granted, Detective Kimball returned to the residence to resume the search which was authorized for additional narcotics and drug paraphernalia. N.T. at 7.

---

[2] Neither the docket nor the transcript from the preliminary hearing indicates the date when the preliminary hearing was held.

[3] On cross-examination, Detective Kimball indicated that he was aware that Marcus Alums was a real person but did not investigate further into any possible connections Alums had to Appellee.

Thereafter, Detective Kimball again examined the bedroom dresser, seized the suspected cocaine, and also discovered a black digital scale, multiple plastic sandwich baggies containing white residue, and men's clothing. N.T. at 7. In addition, Detective Kimball recovered the hydrocodone pills from the nightstand which also contained pill bottles prescribed to Appellee and mail addressed to Appellee. N.T. at 8.

Detective Kimball used a NIK kit to analyze the substance wrapped in the paper towel and the white residue in the plastic baggies, all of which tested positive for cocaine. N.T. at 8. The cocaine wrapped in the paper towel was confirmed by a laboratory to be 4.20 grams of cocaine base (crack cocaine). N.T. at 9, 26. Detective Kimball testified that he suspected that the amount of cocaine base was indicative of drug sales, "especially … the hard form [the cocaine] was in." N.T. at 9. Detective Kimball also conducted a search of Appellee's cell phone, which did not reveal any information relating to illegal drug activity.

On May 10, 2023, Appellee filed a petition for writ of *habeas corpus*, asking that the charges against Appellee be dismissed with prejudice as she claimed the prosecution failed to present a *prima facie* case on all charges. At a July 7, 2023 hearing, the trial court indicated that it would resolve the petition based on the preliminary hearing transcript and parties' briefs.

On August 10, 2023, the trial court granted Appellee's petition in part by dismissing all the charges against Appellee with the exception of the charge for simple possession of hydrocodone.

The Commonwealth filed a timely appeal, certifying that the trial court's order granting Appellee's petition substantially handicaps and/or effectively terminates prosecution of Appellee on the specified charges. The Commonwealth complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

The Commonwealth presents the following issues for our review:

1. When a resident homeowner's bedroom dresser and nightstand, both located directly next to the bed, contained controlled substances; cocaine and hydrocodone, as well as drug paraphernalia; a scale and plastic baggies with cocaine substance, is there *prima facie* evidence, viewing the evidence and its inferences in the light most favorable to the Commonwealth, the resident possessed the controlled substances and drug paraphernalia?

2. When the Defendant possesses controlled substances under a totality of the circumstances gives rise to a trained and experienced officer to believe there is intent to distribute the controlled substances, viewing the evidence and its inferences in the light most favorable to the Commonwealth, does the resident possess controlled substances with the intent to distribute?

Commonwealth's Brief, at 3.

Our standard of review is as follows:

"In reviewing a trial court's order granting a defendant's petition for writ of *habeas corpus*, we must generally consider whether the record supports the trial court's findings, and whether the inferences and legal conclusions drawn from those findings are free from error." **Commonwealth v. Hilliard**, 172 A.3d 5, 10 (Pa.Super. 2017) (internal citations and quotation marks omitted). Further, "the evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law," and the appellate court's review is plenary. **Commonwealth v. Karetny**, 583 Pa. 514, 528, 880 A.2d 505, 513 (2005).

***Commonwealth v. Little***, 305 A.3d 38, 43–44 (Pa.Super. 2023).

We are guided by the following principles:

"[t]he purpose of a preliminary hearing is to avoid the incarceration or trial of a defendant unless there is sufficient evidence to establish a crime was committed and the probability the defendant could be connected with the crime." ***Commonwealth v. Jackson***, 849 A.2d 1254, 1257 (Pa.Super. 2004) (internal citation omitted). ***See also*** Pa.R.Crim.P. 542(D) (stating issuing authority shall determine from evidence presented at preliminary hearing whether there is *prima facie* case that (1) offense has been committed; and (2) defendant has committed it).

The Commonwealth establishes a *prima facie* case when it produces evidence that, if accepted as true, would warrant the trial judge to allow the case to go to a jury. [T]he Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged. Moreover, the weight and credibility of the evidence are not factors at this stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense. Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the **evidence must be read in the light most favorable to the Commonwealth's case.**

***Commonwealth v. Marti***, 779 A.2d 1177, 1180 (Pa.Super. 2001) (internal citations and quotation marks omitted).

***Little***, 305 A.3d at 45 (emphasis added). "A judge at a preliminary hearing is not required, nor is he authorized to determine the guilt or innocence of an accused; his sole function is to determine whether probable cause exists to require an accused to stand trial on the charges contained in the complaint." ***Commonwealth v. Perez***, 249 A.3d 1092, 1102 (Pa. 2021).

The Commonwealth claims the trial court erred in finding the prosecution failed to present a *prima facie* case of simple possession (cocaine), PWID (cocaine and hydrocodone), and possession of drug paraphernalia (digital scale and plastic baggies). The offenses of drug possession, PWID, and possession of drug paraphernalia are defined by statute as follows:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> * * *
>
> (16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.
>
> * * *
>
> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.
>
> * * *
>
> (32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. §§ 780-113(a)(30), (32).[4]

---

[4] Drug paraphernalia is defined as including equipment, products, and materials such as "scales and balances used, intended for use in weighing or
*(Footnote Continued Next Page)*

The Commonwealth first asserts that the trial court erred in determining that the prosecution had not met its burden to show that Appellee possessed the cocaine and drug paraphernalia found in the residence.

It is well-settled that "in narcotics possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the contraband." *Commonwealth v. Brockman*, 167 A.3d 29, 38 (Pa.Super. 2017) (quoting *Commonwealth v. Vargas*, 108 A.3d 858, 868 (Pa.Super. 2014) (*en banc*)).  Since investigators in this case did not find the drugs or drug paraphernalia on Appellee's person, the Commonwealth sought to establish that Appellee constructively possessed the cocaine, hydrocodone, digital scale and plastic baggies.

This Court has defined "constructive possession" as follows:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not.  We have defined constructive possession as "conscious dominion."  We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control."  To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa.Super.2012) (quotation omitted).  "The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant."  *Id.*  (citation omitted).

---

measuring controlled substances" as well as "containers and other objects use, intended for use or designed for use in storing or concealing controlled substances."  35 P.S. § 780-112.

*Commonwealth v. Roberts*, 133 A.3d 759, 767–68 (Pa.Super. 2016).

In *Commonwealth v. Macolino*, 469 A.2d 132 (Pa. 1983), our Supreme Court addressed the issue of joint constructive possession and held that "possession of an illegal substance need not be exclusive; two or more can possess the same drug at the same time." *Id.* at 136. In that case, the Supreme Court concluded that there was sufficient evidence to show that contraband and items of drug paraphernalia discovered in the shared bedroom of a married couple were in the constructive possession of both spouses. The Supreme Court held that "constructive possession can be found in one defendant when both the husband and wife have equal access to an area where the illegal substance or contraband is found." *Id*. at 135.

The Supreme Court thereafter clarified that "even absent a marital relationship[,] constructive possession may be found in either or both actors if contraband is found in an area of joint control and equal access." *Commonwealth v. Mudrick*, 507 A.2d 1212, 1214 (Pa. 1986). In *Mudrick*, the Supreme Court found that the jury could find that cocaine found in a bedroom shared by two occupants was in an area of joint control and equal access to both individuals. *Id*. *See also Commonwealth v. Aviles*, 615 A.2d 398 (Pa.Super. 1992) (*en banc*) (concluding there was sufficient evidence to show that the appellant constructively possessed cocaine, drug paraphernalia, and large amounts of cash openly accessible to her in two bedrooms she had rented out to her sister and brother-in-law as the appellant

had access to the unlocked bedrooms and there was no evidence that appellant was denied entry to these rooms in her home).

Our review of the certified record demonstrates that the evidence at the preliminary hearing would allow a factfinder to reasonably conclude that Appellee constructively possessed the cocaine, hydrocodone, digital scale, and plastic baggies with drug residue found in the bedroom she shared with Crews. A factfinder could infer that this was Appellee's bedroom as there was only one bedroom in the residence and mail addressed to Appellee was found in the nightstand next to the bed.

Although the trial court placed emphasis on the fact that the cocaine and drug paraphernalia was found in a top drawer of a dresser containing only men's clothing, there is no evidence in the record that Appellee was denied access to the dresser which was located in her shared bedroom. Thus, a factfinder could reasonably infer that Appellee had joint access and control to the controlled substances and paraphernalia found in her bedroom. Further, as noted above, Appellee did not appeal the trial court's finding that the Commonwealth presented a *prima facie* case of her possession of the hydrocodone pills found in the nightstand which also contained Appellee's prescription medication and mail addressed to her.

The Commonwealth also argues that the trial court erred in determining the prosecution failed to establish *prima facie* cases for the two counts of PWID as it found insufficient evidence to show Appellee possessed the cocaine and hydrocodone *with intent to deliver*.

To sustain a PWID conviction, "the Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance." **Brockman**, 167 A.3d at 38. "In Pennsylvania, the intent to deliver may be inferred from possession of a large quantity of controlled substance." **Id**. (quoting **Commonwealth v. Lee**, 956 A.2d 1024, 1028 (Pa.Super. 2008)). Where the quantity of the controlled substance is not dispositive as to the intent, the court may also look to other factors, such as "the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and the sums of cash found in possession of the defendant." **Brockman**, 167 A.3d at 39 (quoting **Commonwealth v. Ratsamy**, 934 A.2d 1233, 1237 (Pa. 2007)).

In this case, we agree with the Commonwealth that the evidence at the preliminary hearing did present a *prima facie* case that Appellee possessed the cocaine with intent to deliver. The cocaine was found in Appellee's bedroom along with a digital scale and plastic baggies, which are items of drug paraphernalia used in the preparation and packaging of drugs for distribution. In addition, Detective Kimball, an investigator who conducted thousands of drug investigations, testified that he believed through his training and experience that the "the [hard] form [the cocaine] was in, it would be indicative of drug sales." N.T. at 9.

While the trial court suggested that the fact that the plastic baggies contained cocaine residue was more indicative of personal use than drug distribution, we remind the trial court that the weight of the evidence is not a

factor in determining whether the Commonwealth established a *prima facie* case that would allow the case to be heard by a jury. The trial court failed to draw all reasonable inferences from the evidence that would support a guilty verdict. Viewing the evidence in the light most favorable to the Commonwealth, the prosecution presented probable cause to support an inference that Appellee possessed the cocaine with intent to deliver.

Although we reverse the trial court's decision to dismiss the PWID charge with respect to the cocaine, we are unpersuaded by the Commonwealth's allegation that the trial court erred in finding the prosecution failed to establish a *prima facie* case for the charge of PWID with respect to the hydrocodone. As noted above, investigators recovered hydrocodone pills prescribed to "Marcus Alums" in a nightstand in Appellee's bedroom.

Although the trial court found the prosecution had presented sufficient evidence to demonstrate that Appellee possessed the hydrocodone pills, the trial court emphasized that the record contained insufficient evidence to support an inference that Appellee intended to distribute the pills. The trial court emphasized that the prosecution had not presented any evidence to show the quantity of hydrocodone pills in Appellee's possession. The trial court also indicated that there was no indication that the pills were divided up into smaller quantities for the purpose of distribution or in any packaging that was typically found in the distribution of hydrocodone. The trial court pointed out that there was no drug paraphernalia found that was even remotely associated with the distribution of hydrocodone. As noted above, the trial

court determined that the drug paraphernalia (scale and baggies) discovered in the dresser alongside the cocaine was not possessed by Appellee.

On appeal, the Commonwealth failed to offer any argument or analysis as to why the trial court erred in finding that the prosecution did not meet its burden to show Appellee possessed the hydrocodone with intent to deliver. Given the Commonwealth's lack of advocacy on this point, we find this particular issue to be waived and decline to address it further. *See Commonwealth v. Tchirkow*, 160 A.3d 798, 804 (Pa.Super. 2017) ("[i]t is well-established that when issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof") (internal quotation marks and brackets omitted).

Accordingly, we conclude that the trial court erred in determining that the prosecution failed to establish a *prima facie* case for PWID (cocaine), simple possession of a controlled substance (cocaine), and two counts of possession of drug paraphernalia.[5]   However, we affirm the trial court's

---

[5] Nevertheless, while the evidence presented at the preliminary hearing constituted a *prima facie* case of guilt on these charges, we remind the Commonwealth in order to sustain convictions for the offenses, the prosecution has the burden to prove these charges beyond a reasonable doubt. *Perez*, 249 A.3d at 1102 (noting that while "[a]n offense on which the Commonwealth has met its burden [of showing a *prima facie* case] will be "held over" for trial, at the trial, of course, the Commonwealth's burden is to establish guilt beyond a reasonable doubt").

determination that the Commonwealth failed to establish a *prima facie* case for PWID (hydrocodone).

Accordingly, we reverse the trial court's order in part, affirm in part, and remand for further proceedings, including the reinstatement of charges against Appellee.

Order reversed in part, affirmed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/10/2024