J-S42037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DIEGO CASTILLO-PEDRAZA | : | |
| | : | |
| Appellant | : | No. 470 MDA 2024 |

Appeal from the Judgment of Sentence Entered January 23, 2024
In the Court of Common Pleas of Berks County
Criminal Division at CP-06-CR-0003555-2022

BEFORE:  LAZARUS, P.J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED: DECEMBER 10, 2024**

Diego Castillo-Pedraza (Appellant) appeals from the judgment of sentence imposed after he was convicted of four offenses, including possession of drug paraphernalia,[1] which he challenges in this appeal.  After careful consideration, we affirm.

The trial court summarized the following facts:

On September 24, 2022, Borough of Shillington Police Officers Andrew Dittmann and MacKenzie Adame were on a roving patrol in a marked police vehicle in the Borough of Shillington, Berks County, Pennsylvania.  While the officers traveled on Lynoak Avenue at East Lancaster Avenue, they observed a pickup truck (hereinafter "truck") traveling on East Lancaster Avenue.  The officers noticed the truck's front windshield was tinted.  While following the truck[,] the officers noted that the truck's license plate was not illuminated properly, preventing them from reading the license number.

---

[1] 35 P.S. § 780-113(a)(32).

The officers stopped behind [Appellant], who was behind another vehicle, at a steady red traffic signal at Kenhorst Boulevard and East Lancaster Avenue. When the traffic light turned green, the front vehicle did not immediately proceed through the intersection. [Appellant] honked his truck's horn, and then proceeded around the other vehicle at an accelerated rate of speed, and continued on East Lancaster Avenue.

The officers eventually caught up with the truck and initiated a traffic stop. The truck turned into a restaurant's parking lot and came to a stop. The officers approached [Appellant] in his truck and initiated a Driving Under the Influence ("DUI") investigation.

Officer Adame administered Standardized Field Sobriety Tests ("SFSTs") to [Appellant] in the restaurant's parking lot. After [Appellant] completed the SFSTs, Officer Adame determined [Appellant] was under the influence of alcohol to the extent that he was not able to safely operate a vehicle. The officers transported [Appellant] to the Berks County Processing Center, at the Berks County Courthouse, to determine if [Appellant] would consent to chemical testing for DUI. While at the Berks County Processing Center, Officer Dittmann read [Appellant] the PennDOT DL-26A form. [Appellant] refused to consent to chemical testing of his breath and he refused to sign the form.

While at the Processing Center, … a deputy sheriff search[ed] [Appellant's] wallet. The deputy found a small, crystallized substance in [Appellant's] wallet "within the packaging." Officer Dittmann, as a result of his training and experience as a police officer, observed that the item in the packaging resembled methamphetamine. Officer Dittman placed the methamphetamine and the packaging in which it was wrapped into a clear plastic baggie. Upon returning to the Shillington Borough Police Headquarters, he performed a preliminary substance test which indicated the presence of methamphetamine. Officer Dittmann sent the evidence to a lab for further chemical analysis. As stipulated at trial, upon testing at the Pennsylvania State Police Laboratory in Bethlehem, Pennsylvania, the substance was determined to be methamphetamine.

Trial Court Opinion, 7/5/24, at 2-4 (citations and footnote omitted).

The Commonwealth charged Appellant with five offenses. In addition to possession of drug paraphernalia, the Commonwealth charged Appellant with possession of a controlled substance, driving under the influence (DUI) of alcohol, driving with a blood alcohol content (BAC) of .02 or greater while license suspended, and driving without a license.[2] Appellant's trial began on December 11, 2023, and he was convicted of four of the five offenses the following day.[3] On January 23, 2024, the trial court sentenced Appellant to 11½ to 23 months of incarceration for possession of a controlled substance, followed by a consecutive 4 to 12 months of incarceration for possession of drug paraphernalia. Appellant filed a post-sentence motion on January 30, 2024, which the trial court denied on March 13, 2024. Appellant timely appealed. Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

Appellant presents the following issue for review:

WHETHER THE EVIDENCE PRESENTED AT TRIAL IS INSUFFICIENT TO SUPPORT THE CONVICTION AGAINST APPELLANT FOR POSSESSION OF PARAPHERNALIA[?]

Appellant's Brief at 5.

---

[2] 35 P.S. § 780-113(a)(16), 75 Pa.C.S. §§ 3802(a)(1), 1543, and 1501, respectively.

[3] The jury found Appellant guilty of possessing drug paraphernalia and possessing a controlled substance, and not guilty of DUI; the trial court found Appellant guilty of driving with a BAC of .02 or greater while license suspended, and driving without a license.

We review Appellant's sufficiency claim for "whether, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth, the factfinder reasonably could have determined all the elements of the crime were established beyond a reasonable doubt." *Commonwealth v. Pitner*, 928 A.2d 1104, 1108 (Pa. Super. 2007) (citation omitted). "Additionally, we do not weigh the evidence." *Id.* Any doubts concerning a defendant's guilt are "to be resolved by the factfinder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence." *Id.*

"To sustain a conviction for possession of drug paraphernalia[,] the Commonwealth must establish that items possessed by [a] defendant were used or intended to be used with a controlled substance so as to constitute drug paraphernalia and this burden may be met by the Commonwealth through circumstantial evidence." *Commonwealth v. Little*, 879 A.2d 293, 300 (Pa. Super. 2005).

The Controlled Substance, Drug, Device and Cosmetic Act (Act) prohibits:

> The use of, or possession with intent to use, drug paraphernalia for the purpose of … packing, repacking, storing, containing, … or otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. § 780-113(a)(32).

The Act defines drug paraphernalia as:

> … all equipment, products and **materials of any kind** which are used, intended for use or designed for use in … **packaging**,

- 4 -

repackaging, storing, containing, … or otherwise introducing into the human body a controlled substance in violation of this act. It includes, but is not limited to:

\*\*\*

(9) Capsules, balloons, envelopes and **other containers used**, intended for use or designed for use **in packaging small quantities of controlled substances**.

(10) Containers and **other objects used**, intended for use or designed for use **in storing or concealing controlled substances**.

35 P.S. § 780-102(b) (emphasis added). This Court has held that drug paraphernalia "includes bags used to package or store" drugs. **Pitner**, 928 A.2d at 1108. We have repeatedly recognized "plastic baggies," in particular, as "drug paraphernalia used in the preparation and packaging of drugs for distribution." **See, e.g.**, **Commonwealth v. Smith**, 317 A.3d 1053, 1060 (Pa. Super. 2024) (rejecting trial court's suggestion that cocaine residue in plastic baggies "was more indicative of personal use than drug distribution").

In this case, Appellant argues the Commonwealth did not present evidence of drug paraphernalia, *i.e.*, the packaging containing the methamphetamine. Appellant states:

The word [p]araphernalia was never mentioned during [t]rial testimony. It was mentioned in the Commonwealth's closing argument when the [prosecutor] mistakenly referred to Appellant's wallet as paraphernalia. [Appellant] objected, the [c]ourt agreed, and the [prosecutor] addressed the [j]ury and asked to "strike the portion of my closing where I mentioned to you guys that I submit that you can find the paraphernalia being the wallet. The paraphernalia, if you do find it, again it is in your purview, would only be limited to the baggie that the methamphetamine was found in initially. So do not consider the wallet paraphernalia, please."

Appellant's Brief at 9 (citing N.T., 12/12/23, at 133).

Appellant claims the prosecutor's statement "was a very good attempt by the prosecutor to introduce to the [j]ury the notion that 'the baggie' should be considered paraphernalia," as there "was no mention of a baggie during the testimony at [t]rial." *Id.* Appellant quotes Officer Dittmann, who testified that the methamphetamine "was located in [Appellant's] wallet within the packaging." *Id.* at 10 (citing N.T., 12/11/23, at 78). Appellant "respectfully suggest[s] the Commonwealth simply forgot to address the baggie/ paraphernalia evidence and the attempt to save the charge during the prosecutor's closing argument did not cure the error." *Id.*

Appellant also notes that the trial court, during jury instructions, stated that the Commonwealth, "contends in this case that [Appellant] possessed a plastic baggie and the plastic baggie is drug paraphernalia." *Id.* at 9 (citing N.T., 12/12/23, at 145). Appellant states, "there was no evidence of such presented to the [j]ury." *Id.* at 10.

In response, the Commonwealth argues Officer Dittmann's testimony about the methamphetamine found "within the packaging" satisfies "the definition of drug paraphernalia under the statute." Commonwealth's Brief at 6-7 (citing 35 P.S. § 780-102). The Commonwealth points out Appellant's stipulation to testimony of the forensic scientist, Adam Shober, who "would have testified that the item he was tasked with examining and testing was a plastic bag containing a clear crystalline substance." *Id.* at 6.

Upon review, we find Appellant's argument compelling, but conclude that the record and law favor the Commonwealth.

Prior to jury selection, the trial court informed potential jurors of the charges against Appellant, including possession of drug paraphernalia. N.T., 12/11/23, at 4-5. The court stated that it would be the jury's "duty to determine the facts." *Id.* at 6. Once the jury was selected, the court advised the jurors that they "were the sole triers of fact," and "[i]t doesn't matter what I say or what counsel says." *Id.* at 63. The court cautioned, "remember, nothing [counsel] say[s] is crucial evidence." *Id.*

In opening remarks, the prosecutor told the jury they would hear evidence "about methamphetamines and where they were discovered," and asked the jury to "maintain your common sense, and apply the facts that you hear today to the law that the [trial court] will instruct you in." *Id.* at 66. Appellant's counsel likewise told the jury that they "will use [their] common sense at the end of today." *Id.*

The Commonwealth presented two witnesses, Officer Dittmann and Officer Adame. Appellant did not present any witnesses and did not testify.

Officer Dittmann testified to transporting Appellant to the Berks County Central Processing Office. *Id.* at 76. He described standing "less than six feet" away when a Berks County Sheriff's Deputy searched Appellant and found "a small[,] crystallized substance … located in [Appellant's] wallet **within the packaging**." *Id.* at 78 (emphasis added). Officer Dittmann stated that "[o]nce it was discovered, I placed it into a clear plastic bag that

was sealed and then taken … to be processed." *Id.* at 79. He explained that the evidence was "sent to the Pennsylvania State Police Bethlehem Laboratory for testing." *Id.* The prosecutor interjected, "at this point, we would like to read a stipulation into the record." *Id.* at 81. Appellant's counsel expressed "[n]o objection." *Id.* at 82. Counsel stipulated that the evidence recovered from Appellant was transported to the laboratory, where it was analyzed by the forensic scientist, Mr. Shober. *Id.* at 82-83. Reading from the stipulation, the prosecutor stated:

> Mr. Shober would testify…. [that t]he substance in … a plastic bag containing a clear crystalline substance, was tested and positively determined to be methamphetamine weighing .24 grams, plus or minus 0.01 grams.

*Id.* at 83.

The Commonwealth introduced, without objection, the report Mr. Shober authored on behalf of the Pennsylvania State Police Bureau of Forensic Services (Report). *Id.* at 84 (admitting Report as Exhibit 2). The Report identifies:

**ITEMS: 1 One (1) sealed envelope**

      1.1 One (1) plastic bag containing a clear crystalline substance

Exhibit 2 at 2 (bold in original).

The trial recessed after the presentation of evidence on December 11, 2023, and reconvened the next day. Prior to closing arguments, the trial court addressed the jury, stating, "I said it about 50 times yesterday. The only evidence in this case is testimony … from the witnesses and/or any exhibits

- 8 -

that were entered, including I believe we have one stipulation…." N.T., 12/12/23, at 118.

In her closing argument, Appellant's counsel said to the jury:

I don't know about you all, but I don't recall any testimony about paraphernalia. That is also charged here. The meth was held up – I'm not going to hold it up. Remember, we did stipulate that that was, in fact, methamphetamine that was held up in an evidence bag. I don't recall any testimony regarding what the paraphernalia was.

*Id.* at 123.

The prosecutor countered:

Officer Dittmann testified and you heard the testimony that [the methamphetamine] was, indeed, found in [Appellant's] wallet and it was found in a plastic baggie within the wallet. Folks, the judge will give you the law. But I would submit that one of two things, the plastic bag that it was in is definitely paraphernalia…. The most mundane of objects, including a sandwich baggie, if it's used for the purposes that the judge will give you[,] can become paraphernalia.

*Id.* at 129-30. The prosecutor also said "paraphernalia, if you do find it, again it is within your purview, would only be limited to the baggie that the methamphetamine was found in initially." *Id.* at 133. Among other remarks, the prosecutor stated, "You heard testimony from Officer Dittmann that [Appellant] was found in possession of methamphetamine in a plastic baggie in his wallet." *Id.* at 135.

In charging the jury, the trial court repeated:

You are the judges of the facts. It's your responsibility to weigh the evidence and based on that evidence and logical inferences which flow from such evidence to find the facts and to apply the

rules of law which I will give to you, and then to decide whether [Appellant] has or has not been proven guilty of the charges.

In determining the facts, you're to consider only the evidence which has been presented in court and the logical inferences derived from that evidence. You are not to rely on supposition or guess on any matters which are not in evidence; and again, [you are to rely on] testimony from the witness stand, exhibits, and the stipulation that was offered into evidence regarding the testing that was done on the alleged controlled substance.

*Id.* at 137.

During deliberations, the jury submitted a question to the trial court, asking for "testimony, [an] affidavit, or report from the deputy sheriff confirming that the substance was found in [Appellant's] property?" *Id.* at 155. With the agreement of counsel, the trial court advised the jurors:

To my knowledge, there is no report from the deputy sheriff that was made available to the [c]ourt and [counsel] agree[s] on that. And I think as far as the testimony goes, I think you need to use your collective recollection of what the testimony was.

*Id.* at 155-56.

The jury subsequently issued its verdicts. Although the prosecutor and trial court mentioned a plastic baggie — and Officer Dittmann did not — we discern no error. The trial court repeatedly advised the jury of their role as factfinder, and emphasized that statements by counsel and the court did not constitute evidence. Before counsel made opening statements, the court informed the jury:

You're the sole triers of fact in this case, and the facts come from witnesses on the stand and any exhibits that are admitted into evidence. … It doesn't matter what I say, [or] what counsel says. It's just testimony from the witnesses or any exhibits that are admitted. … It's just the testimony and the exhibits and … one

> minor exception. And that is if the attorneys stipulate as to certain facts and agree that those facts can come into evidence.

N.T., 12/11/23, at 63.

During jury instructions the trial court stated, "In determining the facts, you're to consider only the evidence which has been presented in court and the logical inferences derived from that evidence." *Id.* at 137. It is well-settled that a jury is presumed to follow the trial court's instructions. *See Commonwealth v. Becher*, 293 A.3d 1226, 1240 (Pa. Super. 2023) (citation omitted).

Also, when the trial court also mentioned a plastic baggie, stating that the Commonwealth, "contends [Appellant] possessed a plastic baggie and the plastic baggie is drug paraphernalia," Appellant did not object. *See* N.T., 12/12/23, at 145; *see also Commonwealth v. Lake*, 281 A.3d 341, 347 (Pa. Super. 2022) (a jury charge "is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error").

Finally, while the record does not contain ample evidence of drug paraphernalia, it is still sufficient to support the jury's finding that Appellant possessed drug paraphernalia for the purpose of "storing, [or] containing" methamphetamine as stated in 35 P.S. § 780-113(a)(32). Appellant does not dispute that methamphetamine is a controlled substance, and does not challenge his conviction of possessing methamphetamine. Officer Dittmann testified that the methamphetamine was discovered "within the packaging." N.T., 12/11/23, at 78. The Act defines drug paraphernalia as "all … materials

of any kind which are used, … in … packaging, repackaging, storing, [or] containing a controlled substance." 35 P.S. § 780-102(b). Drug paraphernalia "includes, but is not limited to … envelopes and other containers used … in packaging small quantities of controlled substances," and "other objects used … in storing or concealing controlled substances." 35 P.S. § 780-102(b)(9)-(10). Although Officer Dittmann did not describe or offer details about the "packaging," his testimony was sufficient for the jury to conclude that Appellant possessed drug paraphernalia as defined in 35 P.S. § 780-102(b).[4]

In sum, the evidence was "not so weak and inconclusive that no probability of fact may be drawn from the combined circumstances." **Pitner**, 928 A.2d at 1108. Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to support Appellant's conviction of possessing drug paraphernalia.

---

[4] The stipulation regarding Mr. Shober's laboratory analysis further supports the jury's verdict, as Mr. Shober would have testified to the "substance in … a plastic bag containing a clear crystalline substance" which "was tested and positively determined to be methamphetamine." N.T., 12/11/23, at 83.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>12/10/2024</u>