J-S11021-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| NASSTYLEJAH N. WILKERSON | : | No. 676 WDA 2024 |

Appeal from the Order Entered May 10, 2024
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0000297-2023

BEFORE:  MURRAY, J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.:                          **FILED: AUGUST 7, 2025**

Appellant, the Commonwealth of Pennsylvania, appeals from the order

entered in the Washington County Court of Common Pleas, which granted the

petition for writ of *habeas corpus* filed by Appellee, Nasstylejah N. Wilkerson,

and dismissed all charges against Appellee.[1]  We reverse and remand.

The trial court set forth the relevant facts of this case as follows:

> On January 23, 2023, Detective Joseph Fichter, a City of
> Washington detective who was on patrol in an unmarked
> undercover vehicle, observed a suspicious white Ford Focus
> come off of 19 Pine Street.  The detective followed the
> vehicle and observed the vehicle make a traffic violation by
> failing to signal a turn.  Detective Fichter notified Sergeant
> Karlowsky to initiate a traffic stop.  Sergeant Karlowsky of
> the City of Washington Police Department initiated his
> overhead lights and the vehicle came to a stop.  Detective
> Fichter drove past the traffic stop and noticed that all the

---

[1] The Commonwealth appeals from this interlocutory order pursuant to Pa.R.A.P. 311(d), certifying in good faith that the order substantially handicaps its prosecution.  *See* Pa.R.A.P. 311(d).

windows of the Ford Focus, which were tinted, were not open. The vehicle subsequently attempted to flee and drove onto Lincoln Terrace. Detective Fichter pursued and intercepted the vehicle.

Two occupants exited the vehicle from the driver's side door. Detective Fichter took both individuals into custody and was able to identify [Appellee], and co-defendant Deontre Washington. The detective immediately noticed the passenger side window was open. Detective Fichter requested a canine search to be performed along the flight path of the vehicle from the location of the initial traffic stop to where the individuals were taken into custody. A black Taurus 9 millimeter firearm was found pursuant to the canine search. The firearm was found on the right side of the roadway, congruent with being thrown out the passenger side window of the vehicle. The firearm was located in the flight path and approximately 70 yards from where the vehicle was stopped after being intercepted by law enforcement.

The detective testified that the weather conditions on the date of the incident [were] snowfall for most of the afternoon. The firearm was recovered in the mud and had fresh mud smears. The barrel was also clogged with mud. The detective testified that this was consistent with the firearm being thrown to that location. The firearm was cold when it was discovered, but not frozen or freezing cold to the touch despite the temperatures being freezing throughout the entire day. The detective testified that this was consistent with the firearm having not been sitting in that location for a long period of time.

[Co-defendant] Washington and [Appellee] were both taken to the City of Washington Police Department. [Appellee], after being formally Mirandized,[2] stated that he was just the passenger of the vehicle and Washington was the driver. [Appellee] also stated "Washington, put down the passenger window and [Appellee] saw something black get flung out of the vehicle by Washington, but [Appellee] did not know what it was."

---

[2] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

(Trial Court Opinion, 5/1/24, at 1-3) (record citations omitted).

Police arrested Appellee and charged him with possession of a firearm prohibited, possession of a firearm with manufacturer number altered, and firearms not to be carried without a license.[3] After the preliminary hearing on February 22, 2023, all charges were held for court. The Commonwealth filed a criminal information on March 9, 2023. On November 14, 2023, Appellee filed an omnibus pretrial motion containing a petition for a writ for *habeas corpus*. In the motion, Appellee argued that the Commonwealth did not present evidence that he was in physical possession of a firearm, nor did it present evidence that he constructively possessed a firearm.

The court conducted a hearing on April 4, 2024, during which the Commonwealth entered into evidence the preliminary hearing transcript. The trial court took the matter under advisement and ordered the parties to file briefs. On May 10, 2024, the trial court entered an order granting the petition. The trial court found that the Commonwealth had presented *prima facie* evidence that the firearm was thrown from the passenger side of the Ford Focus, but concluded that the evidence failed to establish that it was Appellee, not co-defendant Washington, who exercised possession and control of the firearm. As such, the trial court granted Appellee's petition and dismissed all charges filed against Appellee. The Commonwealth filed a timely notice of

---

[3] **See** 18 Pa.C.S.A. §§ 6105(a)(1), 6110.2(a), and 6106(a)(1), respectively.

appeal on June 5, 2024.[4]

The Commonwealth raises the following three issues on appeal:

1. Whether the Commonwealth met its burden of a *prima facie* case, when viewing the evidence and its inferences in the light most favorable to the Commonwealth, that the Appellee was in possession of a firearm with an altered/obliterated manufacturer's number to support count two of the Criminal Information that was dismissed by way of a petition for Writ of *Habeas Corpus*?

2. Whether the Commonwealth met its burden of a *prima facie* case, when viewing the evidence and its inferences in the light most favorable to the Commonwealth, that the Appellee was in possession of a firearm with an altered/obliterated manufacturer's number to support count three of the Criminal Information that was dismissed by way of a petition for Writ of *Habeas Corpus*?

3. Whether the Commonwealth has met a *prima facie* burden, when viewing the evidence and its inferences in the light most favorable to the Commonwealth, that the Appellee was in possession of a firearm to support count one of the Criminal Information, even though the Commonwealth acknowledges the grading of this charge is incorrect?

(Commonwealth's Brief at 6).

The following principles apply to this Court's review of an order granting a pretrial petition for writ of *habeas corpus*:

We review a decision to grant a pre-trial petition for a writ of *habeas corpus* by examining the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth. Whether the Commonwealth satisfied its burden of establishing a *prima facie* case for each charged crime is a question of law, to which this Court's standard of

---

[4] The trial court did not order the Commonwealth to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b).

- 4 -

> review is *de novo* and our scope of review is plenary.
>
> A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case. To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein. To meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof.

**Commonwealth v. Wyatt**, 203 A.3d 1115, 1117 (Pa.Super. 2019) (internal citations and quotation marks omitted).

"The Commonwealth establishes a *prima facie* case when it produces evidence that, if accepted as true, would warrant the trial judge to allow the case to go to a jury." **Commonwealth v. Ouch**, 199 A.3d 918, 923 (Pa.Super. 2018) (emphasis omitted). "The Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged." **Id.** "Moreover, the weight and credibility of the evidence are not factors at this stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense." **Commonwealth v. Smith**, 317 A.3d 1053, 1058 (Pa.Super. 2024) (quoting **Commonwealth v. Little**, 305 A.3d 38, 45 (Pa.Super. 2023)). "Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case." **Id.** (citation

and emphasis omitted).

The Commonwealth's issues are related, and we address them together.[5] The Commonwealth argues that the facts established at Appellee's preliminary hearing gave rise to a reasonable inference that Appellee possessed the firearm that was thrown from the Ford Focus during the vehicle chase. The Commonwealth concedes that it did not present any direct evidence of Appellee's possession of the firearm. Nevertheless, the Commonwealth suggests that it produced evidence of Appellee's constructive possession. The Commonwealth emphasizes that the firearm was found on the right side of the road along the flight path of the Ford Focus, which would suggest it having been thrown through the passenger side window. The Commonwealth insists that where Appellee and co-defendant Washington were both in the vehicle, it can be reasonably inferred that the firearm was in an area of joint control and equal access, establishing constructive possession in either or both actors. The Commonwealth concludes that the trial court erred in finding the prosecution failed to present a *prima facie* case on each count, and this Court must grant relief. We agree.

To establish a *prima facie* case of possession of a firearm prohibited, the Commonwealth must present evidence that the defendant possessed a firearm and that he had previously been convicted of one of the enumerated offenses

---

[5] We address the second part of Appellant's third issue, regarding grading, separately.

which made him ineligible to possess that firearm. ***Commonwealth v. Miklos***, 159 A.3d 962, 967 (Pa.Super. 2017); 18 Pa.C.S.A. § 6105(a)(1). To establish a *prima facie* case of possession of a firearm with an altered manufacturer's number, the Commonwealth must present evidence that the defendant possessed "a firearm which has had the manufacturer's number integral to the frame or receiver altered, changed, removed, or obliterated." 18 Pa.C.S.A. § 6110.2(a). To establish a *prima facie* case of firearms not to be carried without a license, the Commonwealth must present evidence "that the defendant intentionally, knowingly, or recklessly carried a firearm in a vehicle or concealed on or about his person outside his home or place of business without a valid and lawfully issued license." ***Commonwealth v. Mead***, 326 A.3d 1006, 1013 (Pa.Super. 2024) (citation omitted); 18 Pa.C.S.A. § 6106(a)(1). Thus, each of the aforementioned charges requires possession as an element of the offense.

> This Court has held that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." ***Commonwealth v. Heidler***, 741 A.2d 213, 215 (Pa.Super. 1999)[(*en banc*)]. Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. ***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa.Super. 2013) (conviction under 18 Pa.C.S.[A.] § 6106(a) supported by a finding of constructive possession). ***See also Commonwealth v. Parker***, 847 A.2d 745 (Pa.Super. 2004) (same). "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." ***Hopkins, supra*** at 820 (citation and quotation omitted). "We have defined constructive possession as conscious dominion," meaning that the

defendant has "the power to control the contraband and the intent to exercise that control." ***Id.*** (citation and quotation omitted).

"To aid application, we have held that constructive possession may be established by the totality of the circumstances." ***Id.*** (citation and quotation omitted).

It is well established that, "[a]s with any other element of a crime, constructive possession may be proven by circumstantial evidence." ***Commonwealth v. Haskins***, [677 A.2d 328, 330 (Pa.Super. 1996)] (citation omitted). In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

***Commonwealth v. Parrish***, 191 A.3d 31, 36-37 (Pa.Super. 2018), *appeal denied*, 651 Pa. 10, 202 A.3d 42 (2019). "To find constructive possession, the power and intent to control the contraband does not need to be exclusive to the [defendant] ... and may be found in one or more actors where the item in issue is in an area of joint control and equal access." ***Commonwealth v. Rojas-Rolon***, 256 A.3d 432, 437-38 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 285 A.3d 879 (2022).

Instantly, the trial court explained that "the Commonwealth presented *prima facie* evidence to establish that the 9-millimeter Taurus firearm, found by law enforcement, was thrown from the passenger side window of the white Ford Focus after the vehicle attempted to flee the initial traffic stop." (Trial Court Opinion at 6). However, the court concluded that the record evidence "fails to establish that it was [Appellee], and not the driver, who exercised possession and control of the firearm." (***Id.***) The court went on to state that

"[Appellee], after being Mirandized, stated that Washington at some point put the passenger side window down and threw a black object out of the window." (*Id.*) The court found that there was "no evidence in the record to establish that the firearm was in plain sight, or that [Appellee] had knowledge of the existence and location of the firearm in the vehicle, prior to the firearm being thrown out of the passenger side window." (*Id.*) (footnote omitted). As such, the court concluded that "the Commonwealth has not met its burden of proving [Appellee] constructively possessed the firearm." (*Id.*)

We cannot agree with the court's analysis. Our review of the certified record demonstrates that the evidence at the preliminary hearing would allow a factfinder to reasonably conclude that Appellee constructively possessed the firearm that was recovered after being thrown from the Ford Focus. As the trial court noted, the Commonwealth presented *prima facie* evidence to establish that the firearm was thrown from the passenger side window after the Ford Focus fled the initial traffic stop. Viewing the evidence in the light most favorable to the Commonwealth, a factfinder could also infer that Appellee, who was a passenger in the vehicle, had access and the ability to control the firearm prior to when it was thrown from the window. As this Court has explained, the power and intent to control a firearm necessary for constructive possession need not be exclusive to the defendant. **See Rojas-Rolon, supra**.

On this record, it is reasonable to infer from the evidence presented at

the preliminary hearing that Appellee could have exercised dominion and control over the firearm which was thrown from the passenger window of the fleeing vehicle in which Appellee was a passenger. **See Wyatt, supra**.[6] Therefore, we conclude that the Commonwealth presented evidence that Appellee constructively possessed the firearm, and the court erred when it dismissed the charges against Appellee based on the Commonwealth's alleged failure to establish the element of possession. Consequently, we reverse the trial court's order dismissing the charges and remand to the trial court for further proceedings.

Finally, we address the Commonwealth's issue concerning the improper grading of count one of the criminal information. The Commonwealth admits that count one of the information—persons not to possess a firearm—is improperly graded as a felony of the second degree and should have been graded as a misdemeanor of the first degree. The Commonwealth acknowledges that Appellee's prior disqualifying conviction was an adjudication of delinquency for robbery. Although this juvenile adjudication

_____

[6] Although the trial court emphasized Appellee's statement that co-defendant Washington threw the firearm, and the lack of direct evidence that Appellee had access to and control over the firearm in the vehicle, the Commonwealth was not required to prove the element of possession beyond a reasonable doubt to establish a *prima facie* case. **See id. See also Ouch, supra**. Furthermore, the weight and credibility of the evidence, including Appellee's claim that his co-defendant threw the firearm from the vehicle, is a matter to be determined at trial by the factfinder, and is not a factor in determining whether the Commonwealth established a *prima facie* case. **See Smith, supra**.

prohibits Appellee from possessing a firearm, the Commonwealth concedes that the charge should be graded as a misdemeanor of the first degree.

Initially, we note that the Commonwealth did not petition the trial court to amend the criminal information to reflect the correct grading of the offense. Pennsylvania Rule of Criminal Procedure 564 governs the amendment of criminal informations and states that a trial court "may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced." Pa.R.Crim.P. 564. Courts have discretion to allow amendments and must consider factors such as whether the amendment involves the same basic elements and arises out of the same factual scenario, whether the defendant had adequate notice of the alleged criminal conduct, and whether the defendant was prejudiced by the amendment. *Commonwealth v. Sinclair*, 897 A.2d 1218, 1222 (Pa.Super. 2006). Upon remand, the Commonwealth may petition the trial court to amend the criminal information to correct the grading of count one. Accordingly, we reverse and remand for further proceedings consistent with this memorandum.

Order reversed. Case remanded. Jurisdiction relinquished.

Judge Murray joins this memorandum.

Judge Lane concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>8/7/2025</u>