J-S02025-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TORRENCE WRIGHT | : | |
| | : | |
| Appellant | : | No. 2841 EDA 2024 |

Appeal from the Judgment of Sentence Entered January 30, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004035-2021

BEFORE: NICHOLS, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY MURRAY, J.:               **FILED MARCH 11, 2026**

Torrence Wright (Appellant) appeals, *nunc pro tunc*, from the judgment of sentence entered after the trial court convicted him of one count each of possession with intent to deliver a controlled substance (PWID), possession of a controlled substance, persons not to possess firearms, and carrying firearms on public streets in Philadelphia.[1] We affirm.

The trial court summarized the facts adduced at trial as follows:

On January 15, 2021, at 7:35 p.m., [Philadelphia] Police Officer Robert DePaul ("Officer DePaul") and his partner[,] Officer Rothman[,] responded to [a report] regarding a foot pursuit in progress at the 5800 block of Chester Avenue, Philadelphia, P[ennsylvania]. Upon their arrival, [the officers saw] Appellant … running out of an alley that connects Chester Avenue to Trinity Street. Officer DePaul exited the marked patrol vehicle to chase Appellant and saw him discard bullets from his right jacket pocket. After apprehending Appellant, … Officer [DePaul] recovered $301

_____

[1] 35 P.S. §§ 780-113(a)(30), (a)(16), 18 Pa.C.S.A. §§ 6105(a)(1), 6108.

[in U.S. currency], a black digital scale, a razor, various narcotics, and a 9mm fired cartridge casing ("FCC") from Appellant's person. As Officer DePaul detained Appellant and preserved the scene, he observed a firearm on the [bed] of [a nearby] pickup truck. While detained[,] Appellant informed Officer DePaul that "a masked gunman ran into his house[," located a block away at 5818 Trinity Street, "a]nd he defended himself[."] N.T., 3/21/22, at 27-28; ***see also id.*** at 9-31.

Police Officer Alexander Light ("Officer Light") responded to the 5800 block of Chester Avenue after Appellant was detained. Officer DePaul notified [Officer Light] of a firearm in the area, and Officer Light located a green handgun placed on a truck bed on the 5800 block of Chester[,] near the breezeway leading to Trinity Street. Officer Light held the scene until detectives arrived. ***See id.*** at 32-38.

Detective Christopher Clair ("Detective Clair") of the Special Investigations Unit arrived on location at Chester Avenue following a report of a shooting. There[,] he retrieved the Taurus G2C 9mm firearm from the pickup truck and three 9mm live rounds from the southwest corner of 58th and Chester Avenue. Detective Clair then investigated the scene of the shooting at 5818 Trinity Street[,] where he recovered six 9mm FCCs, three projectiles, and one 9mm bullet from the vestibule of the house. He also found … narcotics and drug packaging [at the 5818 Trinity Street residence]. ***See id.*** at 39-54.

Via a search warrant, DNA samples were taken from Appellant and the 9mm firearm. ***Id.*** at 50. [The parties stipulated] that Forensic Scientist David Hawkins confirmed the DNA sample comparison on the firearm included the [DNA of] Appellant and three other individuals. ***Id.*** at 57-58. Detective Opalski recovered Appellant's clothing from the incident. ***Id.*** at 55. Forensic Scientist Hung Le of the Criminalistics Laboratory tested the clothing and confirmed it was positive for two components of gunshot residue. ***Id.*** at 58-59.

[The parties stipulated] that Officer Kelly of the Firearms Identification Unit test-fired the [Taurus G2C 9mm] firearm and determined it to be operable. Officer Kelly compared the FCCs from the house and determined that all six were shot from the Taurus G2C 9mm firearm recovered from the truck. Additionally, the FCC recovered from Appellant's pocket also matched the same

firearm. *Id.* at 55-57. The above findings were made to a reasonable degree of scientific certainty.

The parties further stipulated that Forensic Scientist Valerie Davis tested the narcotics recovered from Appellant[,] and established the following results: marijuana (27.2433 grams); methamphetamine (over .467 grams); and cocaine (over 5.492 grams). *Id.* at 55-57.

Officer James Johnson ("Officer Johnson") of the Philadelphia Police Narcotics Field Unit provided an expert opinion on the street value of the drugs recovered. Officer Johnson indicated the marijuana was worth $207.42, the methamphetamine tablets assessed at $340.00[,] and the cocaine valued at $549.20 in street sales. He stated the amount and packaging of the drugs were "consistent with a dealer[,] not a buyer[,]" and referenced the new and unused packaging that was also recovered. [*Id.* at 65.] Officer Johnson expressed his opinion that "the firearm was used to protect the drug operation." *Id.* at 66.

The Commonwealth submitted into evidence proof of Appellant's … ineligibility [to possess a firearm under 18 Pa.C.S.A. § 6105, due to a 2010 conviction for PWID].

Appellant testified he was "staying at an Airbnb," during the Christmas holidays, with his wife and kids, at 13th and Louden Streets[,] in the Logan section of Philadelphia[,] "almost half an hour" from the location of the incident. Appellant confirmed … he was living at the [5818] Trinity Street address[,] but sub-leased the house to a tenant[,] Edward Randoph ("Mr. Randolph"). *Id.* at 73-76. Appellant stopped by [the] Trinity Street [address] on January 15, 2021, at 7:20 p.m.[,] to retrieve his television. *Id.* at 55-57. Upon entry to the property, he saw Mr. Randolph with a man and woman. Because all three were "getting high" and "bagging up crack cocaine," he told them to leave. *Id.* at 78. Appellant used the bathroom[,] then washed his hands in the kitchen[,] when he claimed to hear the door kicked in and 3-4 people came in shooting. Appellant stated he grabbed a gun (from one of the invaders) and also started shooting, then ran out the house. He confirmed it was the same green firearm that was recovered by the police[,] and he [testified that he] "placed the gun on the flatbed [of the pickup truck] … because I know that I'm not supposed to possess a gun." *Id.* at 84. However, Appellant insisted this gun, along with the drugs and ammunition

found on his person[,] did not belong to him[,] as he "was forced in the situation." *Id.* at 84-85.

Trial Court Opinion, 3/5/25, at 3-5 (footnotes and some record citations omitted; some record citations modified; some paragraph breaks added).[2]

On March 21, 2022, following a non-jury trial, the trial court convicted Appellant of the above offenses, and one count of carrying a firearm without a license under 18 Pa.C.S.A. § 6106(a)(1). The trial court ordered the preparation of a pre-sentence investigation report, and scheduled sentencing.

On August 29, 2022, Appellant filed a motion for extraordinary relief, requesting, *inter alia*, "the opportunity to present additional evidence in support of his innocence with respect to the [f]irearms charges." Motion for Extraordinary Relief, 8/29/22, ¶ 3. The trial court scheduled a hearing on the motion for December 8, 2022, immediately preceding the scheduled sentencing hearing.

At the motion hearing, Appellant presented testimony from Mr. Randolph, which the trial court summarized as follows:

[Mr. Randolph] testified … [that he] knows Appellant as "TJ"[. Mr. Randolph] admitted [Mr. Randolph] was smoking crack cocaine with a female acquaintance inside the [5818] Trinity Street house on January 15, 2021, around 7:30 p.m. Mr. Randolph also confirmed that Appellant was in the kitchen when two guys came in with guns. [Mr. Randolph] stated he heard the shooting[,] but did not see it take place because he "got down on the floor," indicating three people were shot. [N.T., 12/8/22, at 13.] Mr. Randolph initially denied seeing Appellant in possession of a

_____

[2] The first names of Officer Rothman, Officer Kelly, and Detective Opalski do not appear in the certified record.

firearm. However, on cross-examination, after reviewing his videotaped police statement[, Mr. Randolph] conceded: "I know he had a gun. I know this." [*Id.* at 28.]

Trial Court Opinion, 3/5/25, at 5-6. At the hearing's conclusion, the trial court granted Appellant's motion for extraordinary relief with respect to the charge of carrying a firearm without a license *only*, and the Commonwealth *nolle-prossed* that charge. *See* N.T., 12/8/22, at 47-48.

The trial court then proceeded to sentence Appellant as follows: 10-20 years' imprisonment for PWID; a concurrent term of 10-20 years' imprisonment for persons not to possess firearms; and no further penalty on the remaining charges. *See* Sentencing Order, 12/8/22. On December 12, 2022, Appellant timely filed a motion for reconsideration of sentence. On January 30, 2023, the trial court granted the motion, and resentenced Appellant as follows: 6-12 years' imprisonment for PWID; a concurrent term of 6-12 years' imprisonment for persons not to possess firearms; and no further penalty on the remaining charges. *See* Sentencing Order, 1/30/23. No appeal followed.

On April 12, 2024, Appellant filed a *pro se* petition under the Post Conviction Relief Act (PCRA),[3] claiming his trial counsel failed to file a requested direct appeal. The PCRA court appointed counsel, who filed an amended petition on Appellant's behalf. On September 20, 2024, the PCRA

_____

[3] 42 Pa.C.S.A. §§ 9541-9546.

court granted the petition and reinstated Appellant's direct appeal rights, *nunc pro tunc*. On October 17, 2024, Appellant filed a notice of appeal from his judgment of sentence.[4] Appellant filed a court-ordered concise statement of errors complained of on appeal under Pa.R.A.P. 1925(b), and the trial court filed an opinion under Rule 1925(a).

Appellant presents three questions for our review:

1. Whether the evidence presented at trial was sufficient to establish each and every element of the crimes for which [A]ppellant was convicted?

2. Whether [A]ppellant's constitutional rights were violated by the introduction of physical evidence that was obtained unlawfully, as well as by the application of the [persons not to possess] statute?

3. Whether the sentencing court abused its discretion by imposing a manifestly excessive sentence that was not based upon the gravity of the violation, the extent of [A]ppellant's record, his prospect of rehabilitation, nor an assessment of the mitigating and aggravating factors as noted in 42 Pa.C.S.[A. §] 9721 of the Sentencing Code?

Appellant's Brief at 8 (issues reordered).

In his first issue, Appellant argues the Commonwealth presented insufficient evidence to sustain his convictions for PWID and persons not to possess firearms. Appellant's Brief at 18-20. When reviewing a sufficiency claim, we must determine

_____

[4] Appellant's notice of appeal purported to appeal from his December 8, 2022, judgment of sentence. **See** Notice of Appeal, 10/17/24. However, the appeal properly lies from the January 30, 2023, judgment of sentence entered after the trial court granted Appellant's motion for reconsideration of sentence. We have amended the caption accordingly.

whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, [is] sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence.

*Commonwealth v. Rojas-Rolon*, 256 A.3d 432, 436 (Pa. Super. 2021) (citation omitted).

Regarding his PWID conviction, Appellant argues the Commonwealth presented insufficient evidence to establish his intent to deliver the controlled substances. Appellant's Brief at 20. Appellant asserts the marijuana "was not packaged for resale[;] rather, it was one bulk ounce of marijuana in one bag." *Id.* Appellant argues "the crack cocaine was arguably packaged in a way that could support an opinion that it was intended for resale, but the facts of the case do not support that conclusion." *Id.* Noting Officer Johnson provided expert testimony regarding indicia of intent to deliver, Appellant nevertheless maintains Officer Johnson failed to consider Appellant's own trial testimony.[5]

---

[5] Appellant fails to cite to the record in connection with his sufficiency argument, and we cannot discern which aspects of his trial testimony he contends Officer Johnson did not consider. *See* Pa.R.A.P. 2119(c) ("If reference is made to the … evidence … or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, … a reference to the place in the record where the matter referred to appears."); *(Footnote Continued Next Page)*

Appellant argues that, "[w]ithout any indicia of sale by [A]ppellant, the expert opinion alone was insufficient to support [Appellant's] conviction for PWID." *Id.*

The PWID statute prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act…." 35 P.S. § 780-113(a)(30). "To sustain a PWID conviction, the Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance." *Commonwealth v. Smith*, 317 A.3d 1053, 1060 (Pa. Super. 2024) (citation and quotation marks omitted). "It is well settled that all the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with intent to deliver." *Commonwealth v. Baker*, 72 A.3d 652, 658 (Pa. Super. 2013) (citation omitted).

> In Pennsylvania, the intent to deliver may be inferred from possession of a large quantity of controlled substance. Where the quantity of the controlled substance is not dispositive as to the intent, the court may also look to other factors, such as the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and the sums of cash found in possession of the defendant.

*Smith*, 317 A.3d at 1060 (citations and quotation marks omitted).

---

*Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (*en banc*) (where an appellant fails to cite the record, this Court will not "scour the record to find evidence to support an argument").

The trial court rejected Appellant's sufficiency claim as to his PWID conviction:

> The trial court determined that Appellant had the requisite intent to deliver a controlled substance. He possessed 27.433 grams of marijuana, 15.878 grams of methamphetamine (divided amongst 34 individual pill capsules), and 7.0634 grams of crack cocaine. These amounts established the first element of PWID[, *i.e.*,] possession of a controlled substance. The total street value of these narcotics was $1,196.76…. Additionally, Appellant had numerous new and unused small Ziploc baggies on his person. N.T., 3/21/22, at 63-71. He also carried $301 [in cash], a black digital scale, and a razor at the time of his arrest. [Officer] Johnson—an expert in the use, packaging, and sales of narcotics— testified these items were consistent with a drug seller and not a buyer, establishing the second element of PWID[, *i.e.*,] intent to deliver a controlled substance. ***See id.*** at 65.

Trial Court Opinion, 3/5/25, at 8.

We agree with the trial court's analysis and conclusion. Our review of the record confirms the Commonwealth presented sufficient evidence to support Appellant's PWID conviction.

With respect to his persons not to possess conviction, Appellant does not directly argue the Commonwealth presented insufficient evidence. ***See*** Appellant's Brief at 19-20. Rather, Appellant argues his own trial testimony "sufficiently established the requirements of a valid justification defense" under 18 Pa.C.S.A. § 503.[6] ***Id.*** at 20. Appellant maintains he provided

_____

[6] "Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if … the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged[.]" 18 Pa.C.S.A. § 503(a)(1); ***see also***
*(Footnote Continued Next Page)*

"credible testimony" to "establish that he was the victim of a home invasion, and that he took the firearm from one of the intruders to defend himself." ***Id.*** at 19.

Section 6105 provides, in relevant part, as follows:

> A person who has been convicted of an offense enumerated in subsection (b),[7] within or without this Commonwealth, regardless of the length of sentence … shall not possess, use, control, sell, transfer or manufacture … a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1) (footnote added).

Regarding Appellant's persons not to possess conviction, the trial court set forth the following analysis:

> Pennsylvania courts have held the defense of justification can apply to a Section 6105 charge where the defendant's possession of a firearm occurred during a struggle with the victim. ***Miklos***, 159 A.3d at 968-69. However, Appellant
>
> > must offer evidence to show (1) that he was faced with a clear and imminent harm, not one which is debatable or speculative; (2) that he could reasonably expect that his actions would be effective in avoiding this greater harm; (3) that there is no legal alternative which will be effective in abating the harm; and (4) that the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue.

---

***Commonwealth v. Miklos***, 159 A.3d 962, 968-69 (Pa. Super. 2017) (a justification defense may be available to a defendant charged with unlawfully possessing a firearm, where the defendant came into possession of the firearm by disarming another person during an altercation).

[7] Appellant does not dispute his prior conviction of an enumerated offense.

> ***Commonwealth v. Billings***, 793 A.2d. 914, 916 (Pa. Super. 2002) [(discussing entitlement to a jury instruction on the defense of justification by necessity under 18 Pa.C.S.A. § 503)].
>
> Under the totality of circumstances, the Commonwealth proved beyond a reasonable doubt that Appellant possessed the firearm recovered from the bed of the pickup truck with the following testimony and evidence: gunshot residue on Appellant's clothing, Appellant's DNA on the firearm, FCCs recovered from the house at Trinity Street and in Appellant's pocket matching the firearm, and Appellant's admission to shooting/possessi[ng] the gun. N.T. 3/21/22 at 55-59. These facts are more than sufficient for the trial court to convict [Appellant under Section 6105.]
>
> Overall, the [trial] court found the testimony of Appellant and [Mr. Randolph] lacking in credibility. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. ***Commonwealth v. Hopkins***, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that the appellate court cannot substitute [its] judgment for that of the trier of fact. ***Id.*** at 914. …
>
> Though Appellant attempts to argue a "justification" defense, he fails to present credible evidence to support this contention. The physical evidence did not support Appellant's story that he was "faced with clear and imminent harm" under the circumstances … as outlined in ***Billings***, ***supra***. The ballistic evidence proves the existence of only one shooter at the property[,] rather than two or three as alleged by Appellant. Therefore, the remaining requirements detailed in ***Billings*** are n[either] applicable nor relevant to this matter.

Trial Court Opinion, 3/5/25, at 9-11 (some citations modified).

The trial court's findings are supported by the record, and its legal conclusion is sound. Our review confirms the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to establish that Appellant's firearm possession was not justified by necessity. We reiterate that, in reviewing sufficiency claims, we cannot not re-weigh the evidence or impose our own credibility determinations, and "the fact-finder is free to

believe all, part or none of the evidence." ***Rojas-Rolon***, 256 A.3d at 436; ***see also Commonwealth. v. Tielsch***, 934 A.2d 81, 94 (Pa. Super. 2007) (rejecting a sufficiency claim premised on attacking a Commonwealth witness's credibility, "because a determination of credibility is within the sole province of the trier of fact" (citation and quotation marks omitted)). Appellant's first issue merits no relief.

In his second issue, Appellant argues the trial court "erred by allowing the introduction of physical evidence that was obtained in violation of" Appellant's constitutional rights. ***Id.*** at 15. Appellant maintains police subjected him to an investigative detention without reasonable suspicion. ***Id.*** at 15-16. Separately, Appellant argues the persons not to possess statute, 18 Pa.C.S.A. § 6105, is unconstitutional as applied to him, relying on ***New York State Rifle & Pistol Assoc. v. Bruen***, 597 U.S. 1 (2022). ***Id.*** at 16-18.

Both of these arguments are waived. Appellant did not file a motion to suppress the evidence he now contends was obtained via an illegal search, nor did he raise a challenge to Section 6105's constitutionality before the trial court. "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Additionally, Appellant failed to identify either of these arguments in his concise statement of errors complained of on appeal. ***See*** Concise Statement, 11/9/24; ***see also Commonwealth v. Bonnett***, 239 A.3d 1096, 1106 (Pa. Super. 2020) ("It is

well-established that any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review."); Pa.R.A.P. 1925(b)(4)(vii) (stating issues not included in the concise statement are waived). Appellant's second issue merits no relief.

In his third issue, Appellant purports to challenge the discretionary aspects of his sentence. *See* Appellant's Brief at 21-22. "There is no automatic right of appeal from the discretionary aspects of a sentence." ***Commonwealth v. Glawinski***, 310 A.3d 321, 325 (Pa. Super. 2024) (citation omitted). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) **whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence**, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Id.*** (emphasis added; some citations omitted).

Our review discloses Appellant failed to preserve his discretionary sentencing challenge before the trial court. Appellant filed a post-sentence motion seeking reconsideration of his initial December 8, 2022, sentence. On January 30, 2023, the trial court granted that motion and resentenced Appellant. However, Appellant filed no post-sentence motion seeking reconsideration of his January 30, 2023, sentence, nor did he preserve his

challenge on the record at the resentencing hearing. ***See generally*** N.T., 1/30/23.

As Appellant did not properly preserve the issue, he cannot invoke this Court's jurisdiction to challenge the discretionary aspects of his sentence. Accordingly, his third and final issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/11/2026